IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANN CORRADO and AUGUSTINE CORRADO | : : | CIVIL ACTION |
| Plaintiffs, | : : | NO. 08-1905 |
| vs. | : : | |
| SUPER FRESH FOOD MARKETS, INC. Defendant. | : : | |

DuBOIS, J.                                                                                                December 17, 2009

**M E M O R A N D U M**

**I.**     **Introduction**

Plaintiffs Ann Corrado ("Corrado") and her husband Augustine Corrado commenced this negligence action against defendant Super Fresh Food Markets, Inc. ("Super Fresh") in which they claim damages arising out of Corrado's slip and fall on July 11, 2006, at defendant's store located in Claymont, Delaware. Presently before the Court is defendant's Motion for Summary Judgment ("Motion"), which the Court grants for the reasons set forth below.

**II.**     **Background**

On July 11, 2006, at approximately 5:00 p.m., plaintiffs, who are residents of Pennsylvania, entered defendant's[1] store located at 2105 Philadelphia Pike in Claymont, Delaware. (Compl. ¶ 7.) They were in route to their son's house in Claymont, Delaware, and decided to purchase a fruit bowl to bring with them. (See Mot. ¶¶ 12-13, Ex. C, Ann Corrado Dep. 16; Plfs.' Resp. ¶¶ 12-13.) After selecting her purchase in the produce department,

---

[1] Super Fresh is a Delaware Corporation with a principal place of business in New Jersey. (Mot. ¶ 3.)

1

Corrado, while walking to the checkout counter, slipped on a crushed blueberry or blueberries, causing her to fall backwards and injure her left knee. (Compl. ¶ 7.)

Corrado did not observe any garbage, debris, or fruit on the floor when she entered the produce department or before she fell. (Mot. ¶ 15, Plfs.' Resp. ¶ 15.) No one, including Corrado's husband or the thirty-to-forty-five Super Fresh employees working that evening, witnessed her fall. (Mot. ¶¶ 24, 29; Plfs.' Resp. ¶¶ 24, 29.) Corrado did not know what she had slipped on until the store manager, John Colantuono, observed a blueberry smear on the floor, which was a couple of inches long and about a quarter-inch wide, and advised Corrado that there was also a blueberry smear on the bottom of her sandal. (Mot. ¶ 22; Plfs.' Resp. ¶ 22.) The fall was within five feet of a display of blueberries packaged in "clam shell" plastic containers. (Mot. Ex. E, John Colantuono Dep. 44-45.) There is no video surveillance of the incident. (Mot. ¶ 38; Plfs.' Resp. ¶ 38.)

Corrado sought medical treatment after the accident. Following an MRI, which showed a tear in her medial meniscus, Dr. Jess H. Lonner recommended and performed arthroscopic surgery on her left knee on November 1, 2006. (Plfs.' Resp. Ex. B, Lonner Report, at 2.) Dr. Lonner opined that the tear was due to Corrado's slip and fall. (Id.) Following surgery, Corrado received physical therapy on her knee from November 15, 2006, to January 24, 2007. (Plfs.' Resp. Mem. 3.) She has outstanding medical bills in the amount of $20,289.85. (Id.)

Plaintiffs filed a Complaint in this Court on April 23, 2008. In Count One, Corrado alleges that defendant was negligent in failing to properly inspect and clean its floors. Specifically, she claims that the crushed blueberry or blueberries were "apparent, open and known" to the defendant and that the "condition had existed for a sufficient length of time" to

establish proof of "actual and/or constructive knowledge or notice thereof." (Compl. ¶ 8.) In Count Two, Corrado's husband alleges that defendant's negligence deprived him of his wife's society, services, and companionship. (Id. ¶ 19.)

## III. Choice of Law

Federal courts exercising diversity jurisdiction must apply the conflict of law rules of the forum state. On Air Entertainment Corp. v. Nat'l Indem. Co., 210 F.3d 146, 149 (3d Cir. 2000) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)). Therefore, Pennsylvania choice of law rules apply to this case.

Pennsylvania applies "interest/contacts" methodology to choice-of-law questions. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226-27 (3d Cir. 2007). This is a "flexible choice of law rule which weighs the interests [its] sister-states may have in the transaction." Powers v. Lycoming Engines, 328 Fed. Appx. 121, 124 (3d Cir. 2009) (quoting Commonwealth v. Eichinger, 915 A.2d 1122, 1133 (Pa. 2007)). Pennsylvania's choice-of-law analysis requires the Court to conduct a two-part inquiry: "The first level of scrutiny considers whether 'an actual or real conflict [exists] between the potentially applicable laws.'" Powers, 328 Fed. Appx. at 125 (quoting Hammersmith, 480 F.3d at 230) (brackets added in Powers). "If there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation.'" Hammersmith, 480 F.3d at 230. "A 'deeper [choice of law] analysis' is necessary only if both jurisdictions' interests would be impaired by the application of the other's laws (i.e., there is a true conflict)." Id. (quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)) (brackets added in Hammersmith). The second level of scrutiny applies only when a true conflict

3

exists. "[T]he Court must then determine which state has the 'greater interest in the application of its law.'" Hammersmith, 480 F.3d at 231 (quoting Cipolla, 267 A.2d at 856). To determine the significance of a state's interests, courts assess the "contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interests underlying the particular issue before the court.'" Cipolla, 267 A.2d at 856 (quoting Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964)).

Both plaintiffs and defendant argue that Delaware law should apply in this case. The Court agrees and concludes that under the circumstances presented, an analysis of whether there is a true conflict between Pennsylvania and Delaware law is unnecessary.

The Court determines that a number of factors weigh in favor of applying Delaware law. First, defendant's store is located in Delaware. See McDowell v. Kmart Corp., No. 06-CV-02508, 2006 U.S. Dist. LEXIS 46903, *5 (E.D. Pa. July 12, 2006); Ramey v. Wal-Mart, Inc., 967 F. Supp. 843, 845 (E.D. Pa. 1997). Second, Delaware is the site of Corrado's accident: "while Pennsylvania has rejected strict adherence to *lex loci deliciti*, the location of the accident 'remains especially important in cases in which the claim arises from the use of and condition of property, traditionally matters of local control.'" McDowell, 2006 U.S. Dist. LEXIS 46903, at *5 (quoting Ramey, 967 F. Supp. at 845 (internal quotation marks omitted)). Third, "defendant could reasonably be expected to fashion its conduct according to [Delaware] law because its store was located in that state" and plaintiffs, by traveling to Delaware to visit the store, chose to subject themselves to the state's laws. Id. Finally, Delaware has "an interest in the safety of the maintenance of property within its borders, as well as a significant interest in the safety of its visitors." Id. at *6. Finally, there is no disagreement on this issue. For these reasons, the Court

4

will apply Delaware law to this case.

## IV. Standard of Review

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). After this examination, a court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There can be no genuine issue where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322; see also In re IKON Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) ("Only evidence sufficient to convince a reasonable factfinder to find all of the elements of the prima facie case merits consideration beyond the Rule 56 stage.") (internal quotation marks omitted). In order to be sufficient, the evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Where the evidence presented does not meet this threshold, "the plain language of Rule 56© mandates the entry of summary judgment." Celotex, 477 U.S. at 322.

## IV. Discussion

### A. Legal Standard for Negligence

To prevail on a negligence claim under Delaware law, plaintiffs must prove that: (1) defendant owed plaintiff a duty of care; (2) defendant breached that duty; and (3) plaintiffs' injury was caused by defendant's breach. Halchuck v. Williams, 635 F. Supp. 2d 344, 346 (D. Del. 2009). As a storekeeper, the defendant owed plaintiffs a duty to "see that those portions of its premises ordinarily used by its customers are kept in a reasonably safe condition for their use." Howard v. Food Fair Stores, New Castle, Inc., 57 Del. 471, 476 (1964). With regard to negligence actions, defendant "is charged with responsibility for injuries which are caused only by defects or conditions of which the storekeeper had actual notice or which could have been discovered by such reasonable inspection as other reasonably prudent storekeepers would regard as necessary." Id.; see also Shea v. Matassa, 918 A.2d 1090, 1093 (Del. 2007).

Defendant argues that plaintiffs have not made a prima facie case for negligence because they have failed to present evidence that defendant breached its duty of care. The essential question is whether defendant had actual or constructive notice that a dangerous condition existed on store premises – namely, that blueberries were on the floor of the produce department. Thus, to survive summary judgment, plaintiffs must present "more than a scintilla" of evidence that the blueberries "could have been discovered by such reasonable inspection as other reasonably prudent storekeepers would regard as necessary." Howard, 57 Del. at 476. In this case, plaintiffs have made no such showing, and accordingly, the Court grants defendant's Motion.

B.     **Plaintiffs' Evidence of Constructive Notice**

1.     **Lack of Systematic Inspection Policy**

Plaintiffs present a number of arguments in response to defendant's Motion for Summary Judgment. First, plaintiffs argue that defendant "had no systematic means for inspecting the floor of the produce department." (Plfs.' Resp. Mem. 7.) The store had no written policy regarding inspection and maintenance of the floors; rather, employees were verbally instructed to clean the floor as needed. (Mot. Ex. E, John Colantuono Dep. 28-29.) Further, plaintiffs report that "[d]efendant does not have any written maintenance logs that might reveal when and how the inspection of the produce section takes place" or "when and how the floor of the produce section was last cleaned prior to [Corrado's fall]." (Plfs.' Resp. Mem. 8.) Finally, plaintiffs claim that produce clerks are not instructed to perform regular, systematic inspections of the produce floor, such as every one or two hours, and due to their other job duties, they are only present on the produce floor for 30%-40% of their work shift. (Id.)

Through these arguments, plaintiffs suggest that "other reasonably prudent storekeepers would regard as necessary" a written policy regarding inspection and maintenance of the floors, including maintenance logs and floor inspections by employees on a scheduled basis. Howard, 57 Del. at 476. Colantuono, however, testified that defendant reviewed with all employees the nature of their ongoing duty to keep floors clean of trash and debris. (Mot. Ex. E, John Colantuono Dep. 25, 28, 39.) This continuous duty "does not restrict inspections to certain times of the day" but rather requires "all employees [to] constantly keep an eye out for dangerous conditions." (Def.'s Reply 4.)

The Court concludes that plaintiff's evidence presented on this issue does not meet the

"more than a scintilla" standard as set out in Saldana. There is no evidence of any prior falls on produce or other objects on the market floor. Other than Corrado's fall, plaintiffs have no evidence that defendant's policy was ineffective in keeping the store safe. Moreover, there is no evidence of when the blueberries fell to the floor, and thus no evidence that hourly inspections would have kept the floor reasonably safe while continuous, ongoing inspections did not. Based on this record, with no evidence of actual notice, the Court will not impute constructive notice to the defendant.

### 2. Produce Department Inadequately Staffed

Second, plaintiffs assert that the produce department may have been inadequately staffed on the evening of July 11, 2006. Plaintiffs rely on Store Manager Colantuono's deposition testimony, in which he stated that he did not see any other Super Fresh employees besides Joe Engle when he went to assist Corrado after her fall. (Id.; see Mot. Ex. E, John Colantuono Dep. 36.) Colantuono also testified that he was not sure if McClain was working that evening or if another employee had assumed his duties, and he could not identify the produce clerks on duty at that time. (Plfs.' Resp. Mem. 8; see Mot. Ex. E, John Colantuono Dep. 26-27.)

This claim rests on mere speculation stemming from Colantuono's inability to remember whether McClain was on duty the night of Corrado's accident and which produce clerks were working that night. Plaintiffs present no further evidence on this issue. Moreover, plaintiffs have had ample opportunity during discovery to uncover relevant evidence. For example, plaintiffs knew from Colantuono's deposition that McClain was still the Produce Manager at the Super Fresh location where Corrado's fall occurred, and that he would likely have retained a schedule of employees in his department. (Mot. Ex. E, John Colantuono Dep. 52.) Defendant

agreed to produce McClain for deposition on July 21, 2009, but plaintiffs' counsel cancelled the deposition and it was never taken. (Def.'s Reply 3.) Plaintiffs' failure to pursue discovery on this issue does not transform it into a genuine issue of material fact, and thus plaintiffs cannot survive defendant's Motion for Summary Judgment on this ground.

### 3. "No Blueberry Skin"

Third, plaintiffs claim that the fact that "no blueberry skin" was found on the floor or on Corrado's shoe suggests that "it had been walked over more than once and therefore had existed on the floor for a long enough period of time that would have allowed the Defendant, had it had proper staffing and/or procedures, to clean-up the area." (Plfs.' Resp. Mem. 9.) The Court rejects this argument on the ground that there is no evidence as to when the blueberry or blueberries fell to the floor. This argument is mere speculation, and does not meet the Saldana standard.

### 4. Produce on the Floor is a Recurring or Common Occurrence

Finally, plaintiffs rely on the Supreme Court of Delaware's decision in Hazel v. Delaware Supermarket, Inc., 953 A.2d 705 (Del. 2008), to argue that when a defective condition is a recurring or common occurrence, defendant is presumed to have constructive notice of the condition. Colantuono testified that fruit sometimes falls onto the floor and is stepped on; that produce clerks clean up fruit from the floors daily; and that he has seen blueberries fall onto the floor on other occasions. (Plfs.' Resp. Mem. 10; see Mot. Ex. E, John Colantuono Dep. 29, 45.) Plaintiffs argue that because defendant knew this hazard was common and recurrent, constructive notice of the dangerous condition should be presumed.

The Hazel court stated that plaintiff's evidence presented two possible sources for the

water on the floor of the store that caused her to slip: a pallet of ice cream covered in frost that was located near where she fell, or the activities of a deliveryman who was transferring ice cream supplied by his company, Edy's, from a shopping cart into an Edy's freezer in the market. 953 A.2d at 710-11. On this issue, it was admitted by the Edy's employee that occasionally water dripped from frozen products before they were put into the freezer. Id. at 711. As to both potential sources of water, the court determined that a reasonable jury could have concluded that the store should have known that water might accumulate on the floor during the delivery of frozen foods. Id. Continuing, the court stated that "[w]hether the presence of water was caused by the ice cream pallet or [the Edy's employee's] activity . . . , or by some unrelated cause," that was an issue of material fact for a jury to decide. Id.

       This Court concludes Hazel is inapplicable to the case at bar. Hazel cites two cases for the proposition that evidence that a dangerous condition is a "recurring incident" or a "common occurrence" raises a jury question on the issue of notice. Id. at 711 n.11 (citing Barrett v. Red Food Stores, Inc., No. 01-A-01-9108-CV-003021992, Tenn. App. LEXIS 196 (Feb. 26, 1992), and Ruppel v. Kroger Co., No. 3:99CV00115, 2000 U.S. Dist. LEXIS 21311 (W.D. Va. Dec. 20, 2000)). However, the facts of Hazel – and of cases it cites, Barrett and Ruppel – are distinguishable from the facts of this case. Those cases all involve the restocking of frozen foods, during which the presence of water on the floor was a common occurrence. Under those circumstances the courts held there was evidence that defendants breached their duty of care when they failed to clean up a dangerous condition that they should have anticipated when frozen foods were restocked.

       In this case, defendant knew that produce would occasionally fall on the floor. But this is

hardly a common occurrence that defendant should have been required to anticipate. Unlike the delivery of frozen food or the restocking of freezers, which are regularly scheduled events in any supermarket, the falling of fruit on the floor is unpredictable and not linked to any regular activity. Thus, the presence of a blueberry or blueberries on the floor of defendant's store is not a "recurring incident" or "common occurrence" as was involved in <u>Hazel</u>.

V.	**Conclusion**

For the reasons stated above, plaintiffs have failed to present sufficient evidence to establish that defendant breached its duty of care. There is no evidence of negligence in the record before the Court. Accordingly, defendant's Motion for Summary Judgment is granted, and judgment is entered in favor of defendant and against plaintiffs.

An appropriate order follows.